IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DOMAIN VAULT LLC, ) | |
|     *Plaintiff*, ) | |
| vs. ) | Civil Action No. 1:14-cv-2621 |
| ) | |
| JOHN C. BUSH and ) | |
| ECLINICALWORKS LLC ) | |
|     *Defendant*s. ) | |

# RESPONSE TO MOTION TO DISMISS
# (WITH BRIEF)

TO THE HONORABLE WILLIAM J. MARTINEZ, UNITED STATES DISTRICT JUDGE,

COMES NOW Plaintiff, ("D-Vault"), and respectfully responds to the Defendant's, ("E-Works"), motion to dismiss, (Doc. 6), as follows:

## I. SUMMARY

1.   This case is not complicated.  The defendant, E-Works, acknowledges that the key authority on point is *Barcelona.com v. Excelentisimo Ayuntamiento*, 330 F.3d 617 (4th Cir. 2003).  As discussed below, the holding in *Barcelona.com* is contrary to what E-Works contends.

## II.  CONTRARY TO THE DEFENDANT'S ERRONEOUS ARGUMENT, THE ISSUE IS NOT THE DISTINCTIVENESS OF THE *DEFENDANT'S MARK*

2.   E-Works, erroneously argues that the issue considered in *Barcelona.com* (and at issue in the case at bar) is the distinctiveness of the defendant's mark as opposed to the whether the plaintiff's domain name is a generic term.[1]  The holding of *Barcelona.com,* however, is contrary to E-Works' contentions.

3.   In *Barcelona.com,* "[t]he City Counsel owned about 150 trademarks ... such as 'Teatre Barcelona,' 'Barcelona Informacio I Grafic,' and 'Barcelona Informacio 010 El Tlefon Que Ho Contesta Tot.'"[2]  In the *Barcelona.com* case, the Barcelona City Counsel challenged the legality of registration of the domain name "barcelona.com" on the grounds that the "name was confusingly similar to numerous trademarks that the City Council owned."[3]

4.   In determining the lawfulness of the registration of the domain name 'Barcelona', (and thus entitlement to relief under 15 U.S.C. § 1114(2)(D)(v)), the distinctiveness of the **marks owned by the City Counsel** was <u>not</u> contested**.**  Rather, to determine whether the plaintiff established entitlement to relief under 15 U.S.C. § 1114(2)(D)(v), the Court of Appeals examined the question of whether the *domain name* was "confusingly similar" to the City Counsel's registered marks.[4]

---

[1] Doc 6 at page 9.
[2] *Id*. at 620.
[3] *Id.*
[4] *Id.* at 619, 629.

5. In reversing the district court, the Court of Appeals ruled that because the domain name was generic, there was no need to test for confusing similarity against the City Counsel's marks. Thus, the Court of Appeals ruled that the domain name Barcelona, **"should have been treated as a purely descriptive geographical term" and "[i]t follows then that there was nothing unlawful about Nogueras' registration of, nor is there anything unlawful under United States trademark law about Bcom, Inc.'s continued use of that domain name."** [5]

6. Again, the Court of Appeals in *Barcelona.com* did not test the marks owned by the Barcelona City Counsel for distinctiveness. Rather, the Court of Appeals reversed the district court's finding that the challenged <u>domain name</u> was "confusingly similar" to the registered marks[6] because the domain name was 'purely descriptive' and therefore "there was nothing unlawful about Nogueras' registration".[7]

7. The legal principle applied by the Court of Appeals in *Barcelona.com* is a matter of well-settled law. Over a century ago, the Supreme Court laid down the "settled rule to be 'that no one can appropriate as a trade-mark a generic name or one descriptive of an article of trade, its qualities, ingredients or characteristics, or any sign, word or symbol' ".[8] The Supreme Court was explicit in its ruling that **the public's right to use generic terms could not be abridged**

---

[5] *Id.* at 629.
[6] *Id.* at 619.
[7] *Id.* at 629.
[8] *Standard Paint Co. v. Trinidad Asphalt Mfg. Co.,* 220 U.S. 446, 453 (1911).

**through the registration of a mark**.  The Supreme Court ruled that 'a generic and descriptive name' could not be "lawfully withdrawn from common use" by registration of a trade mark.[9]

8.     Accordingly, the Court of Appeals in *Barcelona.com* ruled that there was nothing unlawful about the registration of "Barcelona.com" because 'Barcelona' was a generic term.  Simply put, registration of a mark does not remove generic terms from the public domain.

9.     At least one Supreme Court Justice has noted that "The Lanham Act is carefully crafted to prevent commercial monopolization of language that otherwise belongs in the public domain."[10]  Moreover, the Supreme Court has recognized that if the Lanham Act were interpreted to allow registration of a mark to grant a private entity monopolistic rights as to a generic word, such an interpretation would raise fundamental constitutional questions as to whether Congress could ever grant a private entity rights with respect to a generic term.[11]

---

[9] *Id.*

[10] *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 573 (1987).

[11] *Id.* at 532.

## III.  THE PLAINTIFF HAS SUFFICIENTLY PLED THAT "ECLINICAL WORK" IS A GENERIC TERM

In an abundance of caution, D-Vault shows the following:

10.  E-Works erroneously argues that the Complaint's pleading allegation "*The term 'eClinical work' is a generic term descriptive of work with electronic systems for automating the management of clinical trials and records*" is not a sufficient pleading allegation that the term 'eClinical Work' is generic.

11.  While a plaintiff should not have to marshal proof in its complaint,[12] and "does not need detailed factual allegations",[13] if found necessary by this Honorable Court,  D-Vault can amend to detail that the term 'eClinical Work' is a generic term in common industry use that is demonstrated by reference to dictionaries and industry use of the term.  D-Vault can amend to detail examples of the current and historical use of the term 'eClinical work', predating the use and registration of the term "eClinical Works" by the defendant.  Further, D-Vault can amend to detail examples of use of the generic term such as evidenced by <http://www.chromatographyonline.com/lcgc/article/articleDetail.jsp?id=377749&sk=&date=&pageID=2>;<www.indeed.com/q-Eclinical-Work-jobs.html> ; <http://www.outsourcing-pharma.com/Clinical-Development/Open-source-EDC-software-gaining-ground>; etc.

---

[12] *E.g., IN RE Oppenheimer Rochester Funds Group Securities,* 838 F. Supp. 2d 1148, 1176-7 (D. Colo. 2012).

[13] *E.g., Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).

12. Further, D-Vault can amend to detail examples of dictionary and encyclopedia listings such as the Wikipedia definition of 'eClinical' ("A clinical trial management system [CTMS] is a software system used by biotechnology and pharmaceutical industries to manage clinical trials in clinical research. The system maintains and manages planning, performing and reporting functions, along with participant contact information, tracking deadlines and milestones."), which includes an exhaustive bibliography of sources detailing the generic and descriptive meaning of the term.

## IV. THE PLAINTIFF HAS PLEADED THAT REGISTRATION OR USE OF THE DOMAIN NAME WAS NOT UNLAWFUL UNDER THE LANHAM ACT

Further, in an abundance of caution, D-Vault shows the following:

13. E-Works erroneously argues that the plaintiff has not pleaded that registration or use of the domain name was not unlawful under the Lanham act.[14] However, the plaintiff, D-Vault, alleged in paragraph 1 of its complaint that it lawfully registered the domain name. Further, D-Vault alleged that the term is a generic term[15] and that registration of a generic, descriptive term is lawful per se under the Lanham Act. Accordingly, D-Vault has pled a plausible claim for relief.

---

[14] Doc 6, page 8.
[15] §2.

14. The fact that the name is generic is, by itself, dispositive of legality of the registration of the domain name under the Lanham Act. Accordingly the allegation that the name is generic is sufficient to establish plausibility for the claim that the domain name was lawfully registered and no further pleading to establish the *plausibility* of the lawful registration of the domain name should be required. However, if further pleading detail is deemed necessary by this Honorable Court, D-Vault can and will plead that pursuant to the Lanham Act, registration is lawful (and in good faith) if the registrant has a good faith belief that the registration is lawful.[16]

15. Prior to registration of the domain name, D-Vault obtained a legal opinion that the registration of the domain name was lawful and acted based upon that legal opinion in good faith in registering the name. D-Vault will plead that it did not have knowledge of the existence of the defendant's mark at the time of its registration. If found necessary by this Honorable Court, D-Vault can and will amend to plead that it did not intend to divert any customers through the use of the domain name. Further, D-Vault can and will plead that it registered the name without any intent to profit in any way from the defendant's mark and therefore, it lacked the "bad faith intent to profit from that mark" which is a predicate to the illegal registration of a domain name under the Lanham Act.[17]

---

[16] 15 U.S.C. §1125(d)(1)(B)(ii) ("shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.").

[17] 15 U.S.C. §1125(d)(1)(A)(i).

16. To be clear, pursuant to the Lanham Act domain name registration of even an *infringing* name is <u>lawful</u> if the registrant believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.[18]

17. Further, if further pleading detail is deemed necessary by this Honorable Court, D-Vault can and will plead that (1) the domain name is not <u>identical</u> to the defendant's mark (the domain name contains no "S") and (2) the domain name is not *confusingly* similar to the defendant's mark because "eClinical Work" has an unambiguous generic, descriptive meaning.

18. Finally, if further pleading detail is deemed necessary by this Honorable Court, D-Vault can and will plead that because the name is descriptive, registration of the name as a descriptive term is "fair use" and therefore not unlawful under the Lanham Act, and that in any case, D-Vault believed on reasonable grounds that registration was fair use and therefore the registration was not unlawful.[19]  Notably, at the time D-Vault acquired and registered the domain name, the domain name had been registered for more than half a decade without any complaint being raised by E-Works.

---

[18] 15 U.S.C. §1125(d)(1)(B)(ii).  This is because bad faith is a mandatory element of unlawful domain name registration, and as a matter of statute, if the registrant believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful the registration is *per se* in good faith and lawful. *Id.*

[19] As shown by E-Works' own Exhibit, there is sworn testimony that the intended purpose and use of the domain is for a 'home page' regarding eClinical work, to provide a ready source of information both with respect to job opportunities and tools of the trade. Doc 6, at page 8, ¶3.  If further pleading detail is deemed necessary by this Honorable Court, D-Vault can and will plead that the eClinical Work domain was registered in conjunction with a companion site, "Biomed.com" also a generic, descriptive name relating to the same industry.

## V. E-WORKS ERRONEOUSLY ARGUES THAT NO CLAIM HAS BEEN ALLEGED AS TO 15 U.S.C. § 1114(2)(D)(IV)

20. To prevail in the UDRP arbitration the defendant in this suit, E-Works, was required to establish that D-Vault (A) had no rights or legitimate interests in the domain name and (B) registered the domain name in bad faith. For that reason, dilutive use was a key allegation in the UDRP complaint giving rise to this action.

21. Dilutive use is unlawful and not a legitimate interest. Thus, by misrepresenting that there was dilutive use, E-Works established in its UDRP complaint bad faith and that D-Vault lacked a legitimate interest in the domain name.[20]

22. The public policy purpose of 15 U.S.C. § 1114(2)(D)(iv) is to protect the integrity of the UDRP arbitration process. There is no sanction or penalty *within* the UDRP arbitration process to prevent the fabrication of allegations or evidence. Accordingly, Congress set up a penalty– if a party obtains relief from a UDRP arbitration that was in some part based on a material misrepresentation, then the wrongfully obtained domain name must be returned and damages including attorneys' fees must be paid.

---

[20] Doc 6-1 at pages 8-9.

23. The recent Court of Appeals decision in the case of *ISYSTEMS v. Spark Networks, Limited*, No. 10-10905 (5th Cir. Mar. 21, 2012), illustrates this principle. In *ISYSTEMS*, the Court of Appeals ruled that actionable material misrepresentations include those that would influence an arbitrator's judgment that a domain name is 'dilutive' of a trade mark. Similar to the allegations in the case at bar, in *ISYSTEMS*, the defendant doctored an exhibit to make it falsely appear that the domain name was used to dilute a registered trade mark. That misrepresentation– attempting to establish that the domain owner lacked a *legitimate* interest in the domain name, was sufficient to establish a claim under 15 U.S.C. § 1114(2)(D)(iv).

24. The facts of this case are parallel to those in *ISYSTEMS*. The defendants falsified the exhibits they submitted to the UDRP panel to make it falsely appear that the domain name was being put to a dilutive, unlawful use. Like the defendant in *ISYSTEMS*, through the use of the fabricated evidence and knowing misrepresentation, E-Works and their counsel made it *falsely* appear as though D-Vault had registered the domain name in bad faith and had no legitimate interest in the domain name.

25. To the extent, if any, that this Honorable Court finds the current pleading allegations to be insufficient, D-Vault can and would re-plead to include the above facts and allegations. Currently, the Complaint: (1) pleads that the defendants alleged in the UDRP proceedings that E-Works' mark was diluted,[21]

---

[21] Doc 1 at page 3, ¶11.

and (2) explicitly pleads, in detail, the material misrepresentation made by E-Works in the UDRP proceeding.[22]

## VI. CONCLUSION

For the reasons discussed above, the Complaint is sufficient to state a cause of action for relief under 15 U.S.C. §§ 1114(2)(D)(iv) and (v). Accordingly, the defendant's motion to dismiss should be in all things **denied**. However, should this Honorable Court find that further pleading is necessary, leave is requested to amend the Complaint as discussed above.

                    Respectfully submitted,

                    /s/ Andrew C. Powell
                    Texas Bar No. 24079155
                    5302A Beltline Rd.
                    Dallas, Texas 75254
                    Tel. 214-295-5058
                    Fax 214-261-2232
                    apowell@attorney-email.com

                    FOR DOMAIN VAULT LLC

---

[22] *Id.* at pages 1-2, ¶¶3-5. Notably, the Complaint also pleads that (A) the misrepresentation was made knowingly and (B) based on the misrepresentation as to the content of the eclinicalwork.com webpage, specific, detailed, Section 1114(2)(D)(ii) actions were taken. *Id.*