**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 14-cv-2621-WJM-CBS

DOMAIN VAULT LLC,

      Plaintiff,

v.

JOHN C. BUSH, and
ECLINICALWORKS LLC,

      Defendants.

---

**ORDER DENYING ECLINICALWORKS'S MOTIONS TO DISMISS AND FOR
SUMMARY JUDGMENT, AND GRANTING BUSH'S MOTION TO DISMISS**

---

Plaintiff Domain Vault LLC ("Domain Vault") owns the domain name
eclinicalwork.com.  Domain Vault has sued eClinicalWorks LLC ("eClinicalWorks") and
one of its attorneys, John C. Bush ("Bush"), for "reverse domain name hijacking," which
is the abusive use of trademark rights to "strip domain names from rightful owners."
*Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 17 (1st Cir. 2001).  The
Lanham Act provides a remedy for such abuses.  *See* 15 U.S.C. § 1114(2)(D)(iv)–(v).

Before the Court are three motions: (1) eClinicalWorks's Rule 12(b)(6) Motion to
Dismiss Complaint with Prejudice (ECF No. 6); (2) Bush's Motion to Dismiss Complaint
for Lack of Personal Jurisdiction (ECF No. 21); and (3) eClinicalWorks's Rule 56 Early
Motion for Summary Judgment (ECF No. 22).  For the reasons stated below, the Court
will deny eClinicalWorks's motions to dismiss and for summary judgment.  However, the
Court finds that it lacks personal jurisdiction over Bush and will therefore grant his

motion to dismiss.

## I. LEGAL FRAMEWORK

If the Internet has anything equivalent to a supervisor, it is the Internet

Corporation for Assigned Names and Numbers, usually known as "ICANN."  ICANN is

"a not-for-profit corporation that administers the domain name system pursuant to a

Memorandum of Understanding with the United States Department of Commerce."

*Sallen*, 273 F.3d at 20.  ICANN accredits domain name registrars, which are the

businesses that sell domain names (web addresses) to the consuming public.  *Id*.

ICANN has rules for dealing with potential trademark disputes arising from

domain names.  Specifically, ICANN requires all registrars to

> follow the Uniform Domain-Name Dispute-Resolution Policy
> (often referred to as the "UDRP").  Under the [UDRP], most
> types of trademark-based domain-name disputes must be
> resolved by agreement, court action, or arbitration before a
> registrar will cancel, suspend, or transfer a domain name.
> Disputes alleged to arise from abusive registrations of
> domain names (for example, cybersquatting[1]) may be
> addressed by expedited administrative proceedings that the
> holder of trademark rights initiates by filing a complaint with
> an approved dispute-resolution service provider.

Uniform Domain-Name Dispute Resolution Policy: General Information ("UDRP General

Information"), https://www.icann.org/resources/pages/help/dndr/udrp-en (last accessed

Apr. 6, 2015).

When a registrar issues a web address, its contract with the consumer requires

---

[1] Cybersquatting usually refers to "the practice of registering well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own brand name."  *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (internal quotation marks omitted).

2

resolution of domain name disputes under the UDRP.  *See Barcelona.com, Inc. v.*

*Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 621 (4th Cir. 2003).  Thus,

an allegedly aggrieved trademark holder (the "Complainant") can force the domain

name holder (the "Respondent") into an administrative proceeding "with an approved

dispute-resolution service provider" (the "Provider").  UDRP General Information; *see*

*also* Rules for Uniform Domain Name Dispute Resolution Policy ("UDRP Rule(s)"),

Rule 1, https://www.icann.org/resources/pages/rules-be-2012-02- 25-en (last accessed

Apr. 6, 2015).

The task of the Provider in such a proceeding is to determine whether: (1) the

disputed domain name "is identical or confusingly similar to [the relevant] trademark";

(2) the domain name holder "should be considered as having no rights or legitimate

interests in . . . the disputed domain name"; and (3) the domain name "should be

considered as having been registered and being used in bad faith."  UDRP Rule

3(b)(ix).  If these elements are satisfied, the Provider may order the domain name

cancelled or transferred to the Complainant.  UDRP Rule 3(b)(xiii).  In such a

circumstance, however, the Complainant must agree to "submit, with respect to any

challenges to a decision in the administrative proceeding canceling or transferring the

domain name, to the jurisdiction of the courts in at least one specified Mutual

Jurisdiction."  *Id*.  "Mutual Jurisdiction means a court jurisdiction at the location of either

(a) the principal office of the [domain name] Registrar . . . or (b) the domain-name

holder's address . . . ."  UDRP Rule 1.

The Lanham Act permits UDRP Respondents to challenge a Provider's adverse

decision in court.  Specifically,

> [a] domain name registrant whose domain name has been
> suspended, disabled, or transferred under a policy [such as
> the UDRP] may, upon notice to the mark owner, file a civil
> action to establish that the registration or use of the domain
> name by such registrant is not unlawful under this chapter.
> The court may grant injunctive relief to the domain name
> registrant, including the reactivation of the domain name or
> transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(v).  The Court will refer to this provision as "Subparagraph (v)."

The Lanham Act also allows a UDRP Respondent to seek damages and attorneys' fees if the Respondent can show that the Complainant intentionally misrepresented certain facts to the Provider:

> If a registrar . . . [transfers or cancels a domain name] based
> on a knowing and material misrepresentation by any other
> person that a domain name is identical to, confusingly
> similar to, or dilutive of a mark, the person making the
> knowing and material misrepresentation shall be liable for
> any damages, including costs and attorney's fees, incurred
> by the domain name registrant as a result of such action.

*Id.* § 1114(2)(D)(iv).  The Court will refer to this provision as "Subparagraph (iv)."

## II.  FACTUAL AND PROCEDURAL HISTORY

The following provides a general background on this case.  Additional facts are discussed in the Analysis section as relevant to the various issues.

Domain Vault is a Virginia LLC that owns the domain name eclinicalwork.com. (ECF No. 1 ¶¶ 1, 10.)  Domain Vault registered this domain through the registrar Name.com, which is headquartered in Colorado.  (*Id.* ¶ 13.)

eClinicalWorks is a Massachusetts LLC that owns a registered trademark for the term ECLINICALWORKS.  (*Id.* ¶ 11; ECF No. 22 at 2–3.)  eClinicalWorks filed a UDRP proceeding against Domain Vault with an ICANN-approved Provider, the World

4

Intellectual Property Organization ("WIPO") based in Geneva, Switzerland.  (ECF No. 1 ¶ 3; ECF No. 6-1.)  eClinicalWorks was represented by Bush, an outside attorney who lives in Georgia and works in his law firm's Atlanta office.  (ECF No. 21-1 ¶¶ 2–3.)  eClinicalWorks argued that Domain Vault's registration of eclinicalwork.com was "typosquatting," *i.e.*, taking advantage of a common misspelling of a mark to secure the mark-holder's customers.  (ECF No. 6-1 at 7.)  eClinicalWorks further alleged that eclinicalwork.com "is used to provide a mere parking page that links to [eClinicalWorks's] competitors."  (*Id*. at 9.)

Domain Vault contested eClinicalWorks's allegations.  (ECF No. 6-2.)  Domain Vault argued, among other things, that "eclinical work" is a generic term and that eClinicalWorks had falsely represented that eclinicalwork.com was being used to provide links to eClinicalWorks's competitors.  (*Id*. at 4–5.)  WIPO ruled in favor of eClinicalWorks, however, and ordered Name.com to transfer eclinicalwork.com to eClinicalWorks.  (ECF No. 6-3 at 7.)

Domain Vault then filed this lawsuit, alleging causes of action against eClinicalWorks under both Subparagraph (iv) and Subparagraph (v).  (ECF No. 1 ¶¶ 17–18.)  Domain Vault filed this suit in the District of Colorado because, as required under the UDRP, eClinicalWorks agreed to be subject to a "Mutual Jurisdiction," and selected "the jurisdiction of the courts of Denver, Colorado, the location of the principal office of [Name.com,] the concerned registrar."  (ECF No. 21-3 at 10.)

### III.  ANALYSIS

Although filed in September 2014, this case has already produced three fully

briefed substantive motions.  The Court will first address Bush's Rule 12(b)(2) motion to dismiss, followed by eClinicalWorks's early motion for summary judgment, and conclude with eClinicalWorks's Rule 12(b)(6) motion to dismiss.

**A.      Personal Jurisdiction Over Bush**

      1.      <u>Legal Standard</u>

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties. The Tenth Circuit has established a two-part test for personal jurisdiction: "First, we ask whether any applicable statute authorizes service of process on defendants.  Second, we examine whether the exercise of statutory jurisdiction comports with constitutional due process demands."  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  "In a federal question case such as [a trademark infringement action], in which the federal statute at issue does not authorize nationwide service, personal jurisdiction is determined according to the law of the forum state."  *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004).

Colorado's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause."  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (citing Colo. Rev. Stat. § 13-1-124).  Thus, the Court need only address the constitutional question of whether the exercise of personal jurisdiction over Bush comports with due process.  *Dudnikov*, 514 F.3d at 1070 (noting that the inquiry into whether any statute authorizes service of process "effectively collapses into the second, constitutional, analysis" in Colorado).

The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). When the district court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss. *Id*. A *prima facie* showing is made where the plaintiff has demonstrated facts that, if true, would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). To defeat the plaintiff's *prima facie* case, a defendant "must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotation marks omitted).

The Court will accept the well-pleaded allegations (namely, the plausible, nonconclusory, and nonspeculative facts) of the complaint as true to determine whether the plaintiff has made a *prima facie* showing that personal jurisdiction exists. *Dudnikov*, 514 F.3d at 1070. Any factual conflicts must be resolved in the plaintiff's favor. *Wentz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

      2.   <u>Personal Jurisdiction Analysis</u>

Domain Vault's complaint accuses Bush of "falsely represent[ing] [to the UDRP] that the eclinicalwork.com domain name was 'used to provide a mere parking page that links to Complainant's competitors.'" (ECF No. 1 ¶ 3.) Concerning personal jurisdiction, however, the complaint contains a single allegation covering both eClinicalWorks and Bush: "the defendants agreed to submit to the jurisdiction of the courts of this District in filing their UDRP complaint." (*Id.* ¶ 13.)

In response, Bush submits a declaration stating, among other things:

• "I am an intellectual property attorney in the Atlanta, Georgia, office of Bryan Cave LLP."

• "I reside in Georgia and have always lived in Georgia except when I attended college and law school."

• "I was admitted to the State Bar of Georgia in 2006 and have practiced law in Georgia since my admission.  I am not admitted to any other state bar."

• "I have served as one of the outside attorneys representing eClinicalWorks, LLC, in various intellectual property matters.  I am not, and have never been, an owner, officer, or employee of eClinicalWorks."

• "I have never entered Colorado.  I have never practiced law or appeared before any court in Colorado.  I do not own any property in Colorado and do not maintain a bank account in the state."

• "In representing eClinicalWorks in the UDRP proceeding against Domain Vault . . . I was not required to consent, nor did I consent, to the jurisdiction of any court . . . ."

(ECF No. 21-1 ¶¶ 2, 3, 5, 7, 8, 9.)  Bush accordingly argues that (1) eClinicalWorks's consent to Colorado jurisdiction is not the same as his own consent, and (2) Domain Vault cannot make out a personal jurisdiction case under any other theory.  (ECF No. 21 at 6–8.)

In response, Domain Vault does not challenge Bush's declaration nor does Domain Vault defend its original allegation of consent.  Domain Vault instead invokes

*Calder v. Jones*, where the Supreme Court held that two *National Enquirer* employees

acting entirely from Florida could be sued for libel in California because their actions

> were expressly aimed at California.  Petitioner South wrote
> and petitioner Calder edited an article that they knew would
> have a potentially devastating impact upon [the plaintiff].
> And they knew that the brunt of that injury would be felt by
> [the plaintiff] in [California,] the State in which [the plaintiff]
> lives and works and in which the *National Enquirer* has its
> largest circulation.

465 U.S. 783, 789–90 (1984).

Attempting to fit Bush into *Calder*'s "expressly aimed" framework, Domain Vault

raises an allegation not contained in its complaint: "Upon information and belief based

on Bush's own statements, Bush personally manufactured the fabricated 'evidence'

submitted in the UDRP arbitration proceedings."  (ECF No. 23 ¶ 5.)  Domain Vault then

asserts that "Bush was explicitly aware that [Name.com, the registrar] is located in the

State of Colorado," and that

> Bush made the material misrepresentation with the intention
> that the UDRP panel would rely upon the misrepresentation
> and order [N]ame.com to act in Colorado to transfer the
> name away from [Domain Vault].  The impact of Bush's
> action was directly and *explicitly* aimed at the domain name
> registrar in Colorado.

(*Id*. ¶ 4 (emphasis in original).)

This argument is meritless.  Name.com is not a party here, nor is there any

allegation that Name.com has been damaged or even inconvenienced in any way.

Name.com is simply the registrar, and it happens to be headquartered in Colorado.

The connection to Colorado is, at best, the sort of "random, fortuitous, or attenuated

contact" that does not support personal jurisdiction.  *Monge v. RG Petro-Mach. (Grp.)*

9

*Co.*, 701 F.3d 598, 613 (10th Cir. 2012) (internal quotation marks omitted).

The Court is aware that actions aimed elsewhere that have their primary effect in Colorado sometimes support personal jurisdiction in Colorado. In *Dudnikov*, for example, a Connecticut company claiming copyright infringement invoked an eBay procedure to shut down a Colorado couple's auction. 514 F.3d at 1068–69. The Colorado couple then sued the Connecticut company in Colorado. *Id*. The Tenth Circuit held that personal jurisdiction over the Connecticut company was proper, even though the allegedly injurious act (invoking eBay's procedures) was a communication "expressly aimed" at eBay in California rather than at the Colorado couple. *Id*. at 1076–77. The Tenth Circuit analogized this to "a bank shot in basketball": "[The Connecticut company's] 'express aim' . . . can be said to have reached into Colorado in much the same way that a basketball player's express aim in shooting off of the backboard is not simply to hit the backboard, but to make a basket." *Id*. at 1075.

In *Dudnikov*, the metaphorical backboard was California and the net was Colorado. In Domain Vaults's case, the backboard is Switzerland and the net is Virginia. At best, Colorado can be analogized to the cart where the basketballs are stored when the game is over. No one can plausibly claim that the intent of a shooter is to get the basketball into that cart. Thus, Domain Vault utterly fails to satisfy the *Calder* "express aiming" test.

Moreover, "an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of his client's home forum's laws and privileges, at least not without some evidence that the attorney reached out to the

client's home forum to solicit the client's business." *Newsome v. Gallacher*, 722 F.3d 1257, 1280–81 (10th Cir. 2013). If this is the rule as to an attorney's *clients* (with whom the attorney has a contractual and fiduciary relationship), then it certainly would apply with even more force to *non-clients* (with whom the attorney usually has no relationship of any degree or kind).

For all of these reasons, the Court holds that Domain Vault has not carried its burden to establish personal jurisdiction over Bush in Colorado. Bush will be dismissed for lack of personal jurisdiction.[2]

## B.    eClinicalWorks's Motion for Summary Judgment

eClinicalWorks argues that summary judgment is appropriate on Domain Vault's Subparagraph (iv) claim. (ECF No. 22.) Domain Vault agrees that early summary judgment is appropriate. (ECF No. 24 at 1.)

### 1.    Legal Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

---

[2] Given this result, the Court need not and does not reach Bush's other arguments for dismissal. (*See* ECF No. 21 at 8–15.)

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotation marks omitted).

2.   <u>Undisputed Facts</u>

The facts described in Part II, *supra*, are effectively undisputed for purposes of this motion.[3]

---

[3] The Court notes that Domain Vault's objections to eClinicalWorks's statement of material facts are inadequate. (*Compare* ECF No. 22 at 2–6 *with* ECF No. 24 at 2–4.) Domain Vault objects to nearly all of eClinicalWorks's statements on the grounds that the declaration supporting eClinicalWorks's exhibits does not show adequate foundation. (ECF No. 24 at 2–17.) However, eClinicalWorks's declaration is simply an attorney declaration that various attached documents are true and correct copies of what they claim to be. (ECF No. 22-1 at

3.   The Parties' Positions

As noted previously, Subparagraph (iv) authorizes damages and attorneys' fees

against a party that uses a "knowing and material misrepresentation . . . that a domain

name is identical to, confusingly similar to, or dilutive of a mark" to convince a UDRP

Provider to transfer a domain name.  15 U.S.C. § 1114(2)(D)(iv).  In WIPO proceedings,

eClinicalWorks specifically represented that eclinicalwork.com "is confusingly similar if

not identical to" the ECLINICALWORKS trademark.  (ECF No. 22-1 at 29 (capitalization

normalized).)  Domain Vault, however, does *not* argue that eClinicalWorks should be

liable under Subparagraph (iv)'s "identical" or "confusingly similar" prongs.  Domain

Vault instead focuses on the "dilutive" prong of this test.  (ECF No. 1 ¶ 18; ECF No. 24

at 5–6.)

eClinicalWorks made no explicit dilution allegation in WIPO proceedings, but

Domain Vault argues that "dilutive" is nonetheless satisfied by eClinicalWorks's

allegation that eclinicalwork.com embodies "typo-squatting that redirects users to the

content of [eClinicalWorks's] competitors."  (ECF No. 22-1 at 31; *see also* ECF No. 24

at 6.)  eClinicalWorks made this argument in WIPO proceedings to establish Domain

---

2–4.)  These documents include eClinicalWorks's official trademark registrations and certain of
the parties' WIPO filings.  The trademark registrations are indisputably judicially noticeable.
*See, e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (Patent and Trademark
Office's records are judicially noticeable).  Whether the WIPO filings are judicially noticeable is
a closer question, *see, e.g.*, *United States v. Speakman*, 594 F.3d 1165, 1173 n.4 (10th Cir.
2010) (refusing to judicially notice an arbitration award), but in all events, Domain Vault provides
no reason to think that any document is not a true and correct copy of what it purports to be.
Domain Vault also provides no "specific reference to admissible evidence in the record
supporting the denial."  WJM Revised Practice Standards III.E.5.  Nor does Domain Vault argue
that eClinicalWorks's exhibits "cannot be presented in a form that would be admissible in
evidence."  Fed. R. Civ. P. 56(c)(2).  Domain Vault simply, and inappropriately, objects.  Should
any additional summary judgment motion be filed in this action, Domain Vault is warned that the
Court will not tolerate further disregard of this Court's summary judgment procedures.

Vault's bad faith, a required element under the UDRP rules.  (ECF No. 22-1 at 31.)

Domain Vault's argument requires the Court to consider what Subparagraph (iv) means by "dilutive."  Domain Vault argues that it is undefined and therefore should be interpreted according to a dictionary definition of "dilute."  (ECF No. 24 at 5 & n.6.)[4] eClinicalWorks counters that "dilutive" must be defined with reference to other instances of "dilutive" and "dilution" in the Lanham Act, most of which specify that only a famous mark can be the subject of a dilution claim—and eClinicalWorks does not claim a famous mark.  (ECF No. 22 at 10; ECF No. 26 at 8–11.)  For that reason, says eClinicalWorks, it cannot be liable for a false claim of dilution.

4.     Whether "Dilutive" Implies a Famous-Mark Requirement

The Court disagrees with Domain Vault's position that "dilutive" is entirely undefined, but the Court is also unwilling to adopt eClinicalWorks's position that "dilutive" implies a famous-mark requirement.

eClinicalWorks points out, correctly, that Subparagraph (iv) was added to the Lanham Act through § 3004 of the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, 113 Stat 1501 (1999).  eClinicalWorks also correctly points out that other instances of "dilutive" in ACPA explicitly link it to famous marks. *See id*. § 3002(a) (specifying liability for registering domain names that are "identical or confusingly similar to [a distinctive] mark" as compared to domain names that are

---

[4] Domain Vault says that "dilute" means "to diminish in strength."  (*Id*. at 5 n.6.)  Domain Vault cites Merriam-Webster's Collegiate Dictionary for this definition, without specifying the edition, publication year, or page number.  Merriam-Webster's online dictionary currently defines "dillute" as, among other things, "to lessen the strength of (something)."  *See* http://www.merriam-webster.com/dictionary/dilute.

"identical or confusingly similar to or dilutive of [a famous] mark") (codified at 15 U.S.C. § 1125(d)(1)(A)(ii)); *id*. (permitting courts to consider, when evaluating bad faith, "the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names") (codified at 15 U.S.C. § 1125(d)(1)(B)(i)(VIII)).  And eClinicalWorks correctly notes that, outside the cybersquatting context, the Lanham Act also requires a "famous mark" before a party can claim infringement under a dilution theory.  15 U.S.C. § 1125(c).

The obvious rejoinder is that this only shows Congress knew how to confine dilution explicitly to the famous-mark context, but Congress did not do so in Subparagraph (iv).  Although there may be some merit to this rejoinder, it does not concern the Court so much as the potential *substantive* effect of implying a famous-mark requirement into Subparagraph (iv).  eClinicalWorks argues, in essence, that only the holder of a famous mark can be liable for a "knowing and material misrepresentation . . . that a domain name is . . . dilutive of [that] mark."  15 U.S.C. § 1114(2)(D)(iv).  Such a holding would create a significant legal loophole, allowing a party with a non-famous mark to falsely claim dilution with impunity.  The Court is unwilling to accept that Congress intended such a loophole.  Subsection (iv) was part of Congress's efforts "to balance the rights given to trademark owners against cybersquatters" and "provide[] some protection to domain name registrants against 'overreaching trademark owners.'"  *Barcelona.com*, 330 F.3d at 625 (quoting S. Rep. No. 106-140, at 11).  Such protection against overreaching trademark owners would be

significantly weakened if the owner knew that it could make any dilution allegation necessary to win a UDRP proceeding so long as its mark is not famous.[5]

Accordingly, the Court is persuaded that Congress intentionally chose not to insert a famous-mark requirement into Subparagraph (iv).  The Court therefore rejects eClinicalWorks's argument that only the holder of a famous mark can be liable for a false claim of dilution.

5.    The Meaning of "Dilutive"

Nonetheless, "dilutive" still needs a definition.  Here, the Court may not focus solely on "the particular statutory language at issue," but must also consider "the language and design of the statute as a whole."  *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).  Subject to the famous-mark discussion above, the Court agrees with eClinicalWorks that "dilutive" should be interpreted with reference to the definition of "dilutive" and "dilution" elsewhere in the Lanham Act.  Put another way, Domain Vault has offered no reason why Congress would insert the dilution concept into Subparagraph (iv) yet intend something different than the dilution concept established elsewhere in the statute.

---

[5] Of course, falsely claiming dilution in a UDRP proceeding might be pointless because dilution is not currently a basis for relief under the UDRP.  *See* UDRP Rule 3(b)(ix)(1) (requiring complaints to describe "the manner in which the domain name(s) is/are identical or confusingly similar to a trademark or service mark in which the Complainant has rights").  However, ACPA is not tied specifically to the UDRP.  ACPA applies generically to "any action of . . . transferring . . . a domain name * * * in the implementation of reasonable policy by [a domain name registration] authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark."  15 U.S.C. § 1114(2)(D)(ii)(II); *see also Barcelona.com*, 330 F.3d at 625 ("The ACPA recognizes the UDRP only insofar as it constitutes a part of a policy followed by registrars in administering domain names . . . .").  Thus, ACPA's interaction with any particular set of dispute-resolution rules is not a proper consideration when determining Congress's intent.  The Court must consider the statute as Congress wrote it.

"Dilution" entered the Lanham Act through the Federal Trademark Dilution Act of 1995 ("FTDA"), Pub. L. No. 104-98, 109 Stat. 985.  The FTDA defined "dilution" as the "lessening of the capacity of a famous mark to identify and distinguish goods or services." *Id*. § 4 (then codified at 15 U.S.C. § 1127; since repealed, as discussed below).  ACPA, enacted four years later, became a part of the Lanham Act with this definition already established.

In 2006, Congress enacted the Trademark Dilution Revision Act ("TDRA"), Pub. L. No. 109-312, 120 Stat. 1730, which reworked the dilution concept introduced in the FTDA.  In particular, the TDRA struck the original definition of dilution, *see* TDRA § 3(e), and replaced it with two more-specific concepts that remain in the Lanham Act today: "dilution by blurring" and "dilution by tarnishment," *id*. § 2 (codified at 15 U.S.C. § 1125(c)).  The TDRA made no substantive changes to the portions of the Lanham Act added by ACPA.

Given this history, the Court concludes that Congress intended "dilutive" in Subparagraph (iv) to draw its meaning from the definition of "dilution" in 15 U.S.C. § 1125(c).  Thus, a "misrepresentation . . . that a domain name is . . . dilutive of a mark," 15 U.S.C. § 1114(2)(D)(iv), will usually mean a misrepresentation that another's domain name is causing dilution by blurring or dilution by tarnishment.  Dilution by blurring means an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." *Id*. § 1125(c)(2)(B).  Dilution by tarnishment means an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *Id*. § 1125(c)(2)(C).  The Court does not hold that a party must

17

use the words "dilution," "blurring," or "tarnishment" to trigger Subsection (iv).

Allegations that would support the elements of dilution by blurring or tarnishment may

suffice.

The Court also does not hold that allegations going directly to blurring or

tarnishment are the exclusive manner in which a dilution misrepresentation can be

made.  For example, the Fifth Circuit in *Isystems v. Spark Networks, Ltd.*, 2012 WL

3101672 (5th Cir. Mar. 21, 2012), addressed a more subtle misrepresentation.  The

defendant in *ISystems* had registered the mark JDATE and the domain name jdate.com

as part of a business "cater[ing] to the Jewish singles community."  *Id*. at *1.  The

plaintiff, by contrast, "developed Julian date computation software, which it marketed

through the Internet domain name 'jdate.net.'"  *Id*.  The defendant filed a successful

UDRP arbitration to have jdate.net taken from the plaintiff and transferred to the

defendant.  *Id*.  The plaintiff then filed a Subparagraph (iv) complaint in federal court,

arguing among other things that jdate.net was noncommercial but the defendant had

falsely represented it as commercial to the arbitrators.  *Id*. at 2.  The Fifth Circuit

analyzed this allegation in the "dilutive" context:

> This alleged misrepresentation is material.  Material
> misrepresentations include those that would influence an
> arbitrator's judgment that the domain name "jdate.net" is
> "dilutive" of the "JDate" mark.  ACPA's definition of dilution
> excludes noncommercial uses of a mark [citing 15 U.S.C.
> § 1125(c)(3)(C) in footnote], so the alleged disguise of the
> noncommercial nature of "www.jdate.net" would impact the
> arbitrator's assessment of whether "www.jdate.net" is
> "dilutive of" the "JDate" mark.

*Id*. (footnote omitted).[6]  Thus, a misrepresentation as to a dilution defense may fall within Subparagraph (iv).

Conceivably, a misrepresentation of dilution could also include a misrepresentation regarding the famousness of a mark, but the Court does not hold that a misrepresentation of dilution *must* include a misrepresentation regarding famousness. To so hold would again raise a loophole in which a party could argue dilution but simply omit any allegation of famousness and thereby avoid Subsection (iv) liability.

6.    Resolution

With this understanding of "dilutive," the Court cannot grant summary judgment at this stage.  Neither party has argued under the foregoing standards whether eClinicalWorks's alleged misrepresentation could be considered a "misrepresentation . . . that a domain name is . . . dilutive of a mark."  15 U.S.C. § 1114(2)(D)(iv). Accordingly, summary judgment will be denied.  This denial is without prejudice to a later motion applying the proper standard.

**C.    eClinicalWorks's Motion to Dismiss for Failure to State a Claim**

1.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such

---

[6] *ISystems* is slightly inaccurate to speak of "ACPA's definition of dilution."  As noted above, the Lanham Act's definition of dilution came by way of amendments other than ACPA.

a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

2.      Facts

The facts as alleged in the complaint are substantially the same as those described in Part II, *supra*.  Domain Vault's response to eClinicalWorks's motion to dismiss attempts to assert additional allegations.  Using a response to assert new allegations is inappropriate.  *See, e.g.*, *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010).  The Court therefore does not consider Domain Vault's additional allegations.

3.      Subparagraph (iv)

eClinicalWorks argues that Domain Vault cannot state a Subparagraph (iv) claim because the alleged misrepresentation about the nature of eclinicalwork.com was not a misrepresentation "that a domain name is identical to, confusingly similar to, or dilutive of a mark."  15 U.S.C. § 1114(2)(D)(iv).  (*See* ECF No. 6 at 10–12; ECF No. 9 at 6–8.) The parties' arguments in this regard center on the "dilutive" prong and are materially

identical to those made in support of or opposition to eClinicalWorks's summary judgment motion. For the reasons stated above in that context, the Court denies eClinicalWorks's motion to dismiss Domain Vault's Subparagraph (iv) claim.

4.    Subparagraph (v)

A Subparagraph (v) claim requires the plaintiff "to establish that [its] registration or use of the domain name . . . is not unlawful under this chapter." 15 U.S.C. § 1114(2)(D)(v).[7] Thus, Domain Vault must establish in this action that its registration or use of eclinicalwork.com would not create liability under ACPA.

To be liable under ACPA in these circumstances, a party must:

> (i) ha[ve] a bad faith intent to profit from [another's] mark . . . ; and

> (ii) register[], traffic[] in, or use[] a domain name that—

> > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark . . . .

15 U.S.C. § 1125(d)(1)(A). Thus, to prove that its conduct was "not unlawful," Domain Vault would need to prove either (1) it did not register, traffic, or use a domain name that is identical or confusingly similar to a distinctive mark, or (2) it did not have a bad faith intent to profit from that mark.

---

[7] As enacted, this sentence actually ends with "this Act" rather than "this chapter." ACPA § 3004. The Court can locate no amendment that made this change, which is potentially significant. If "this chapter" is correct, it would refer to Chapter 22 of Title 15, which encompasses the entire Lanham Act—meaning that a Subparagraph (v) plaintiff would need to prove a lack of violation of any part of the Lanham Act. On the other hand, if "this Act" is correct, it arguably refers only to ACPA. *See Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 959–60 (D. Nev. 2010) (holding as much); *see also Del Monte Int'l GmbH v. Del Monte Corp.*, 995 F. Supp. 2d 1107, 1122 (C.D. Cal. 2014) (citing cases with differing interpretations). The Court need not resolve the question here because eClinicalWorks focuses only on Domain Vault's potential liability under ACPA. (ECF No. 6 at 7.)

eClinicalWorks argues that Domain Vault cannot plead these elements.  (ECF No. 6 at 7–10.)  In response, Domain Vault points to an allegation in its complaint that "the term 'eclinical work' is a generic term descriptive of work with electronic systems for automating the management of clinical trials."  (ECF No. 1 ¶ 2.)  Because a generic term cannot be a distinctive mark, *see, e.g.*, *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210–11 (2000), Domain Vault argues that it has sufficiently pleaded "not unlawful" use under Subparagraph (v).  (ECF No. 8 at 2–8.)

The Court assumes that Domain Vault makes its allegation of genericness consistent with Federal Rule Civil of Procedure 11(b).  As such, the Court must assume it to be true at this stage.  *Ridge at Red Hawk*, 493 F.3d at 1177.  Under that assumption, Domain Vault has stated a claim for "not unlawful" use under Subparagraph (v).  Accordingly, eClinicalWorks's motion to dismiss must be denied.[8]

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendant eClinicalWorks LLC's Rule 12(b)(6) Motion to Dismiss Complaint with Prejudice (ECF No. 6) is DENIED;

2.      Defendant John C. Bush's Motion to Dismiss Complaint for Lack of Personal Jurisdiction (ECF No. 21) is GRANTED.  Defendant Bush is DISMISSED as a party; and

---

[8] Because Domain Vault has pleaded potentially lawful use of a generic term, the Court need not address the parties' arguments regarding the bad faith prong of the Subparagraph (v) test.  (*See* ECF No. 6 at 9–10; ECF No. 8 at 7–8; ECF No. 9 at 5–6.)

3.    Defendant eClinicalWorks LLC's Rule 56 Early Motion for Summary Judgment

(ECF No. 22) is DENIED.

Dated this 8th day of April, 2015.

BY THE COURT:

_____
William J. Martínez
United States District Judge